FILED
2013 Jan-22  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| GREG TOLAR, REID TOLAR<br>AND ANDREW TOLAR,<br><br>    Plaintiffs,<br><br>v.<br><br>BRADLEY ARANT BOULT<br>CUMMINGS,<br><br>CONRAD TAYLOR,<br><br>and<br><br>MARION BANK AND TRUST,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.:

**DEMAND FOR TRIAL BY STRUCK JURY**

---

## COMPLAINT

---

### JURISDICTION AND VENUE

1.　　This is a complaint for legal and equitable relief to redress violations by the Defendants of the Plaintiffs' rights secured by:

    a.　　Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and

      b.     The laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

      a.     28 U.S.C. §§ 1331, 1337, 1343, and 1367;

      b.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, <u>et seq.</u>; and

## PARTIES

3.     Plaintiff Greg Tolar is over the age of nineteen and a resident of Autauga County, Alabama.  Greg Tolar is the father of  Ragan Tolar Livingston.  He is an aggrieved individual within the meaning of Title VII.  42 U.S.C. § 2000e-5(f)(1).

4.     Plaintiff Reid Tolar is over the age of nineteen and a resident of Autauga County, Alabama. Reid Tolar is the brother of Ragan Tolar Livingston.  He is an aggrieved individual within the meaning of Title VII.  42 U.S.C. § 2000e-5(f)(1).

5.     Plaintiff Andrew Tolar is over the age of nineteen and a resident of Montgomery County, Alabama. Andrew Tolar is the uncle of Ragan Tolar Livingston. He is an aggrieved individual within the meaning of Title VII. 42 U.S.C. § 2000e-5(f)(1).

6.     Ragan Tolar Livingston is the Plaintiff in a previously filed Title VII matter, <u>*Ragan Livingston v. Marion Bank and Trust Co.*</u>, 2:11-CV-01369-JEO. This matter is still pending.  Ms. Livingston filed a Charge of Discrimination with the

Equal Employment Opportunity Commission ("EEOC") on October 7, 2008, Charge No. 420-2008-03659, after she was sexually harassed during the course of her employment at Marion Bank by the bank President, Conrad Taylor.    After complaining about the sexual harassment, Defendant Marion Trust, through its officers, directors, and agents, retaliated against Ms. Livingston    The Bank terminated Ms. Livingston's employment and the Bank subsequently subjected her, either directly or indirectly, to additional acts of retaliation.

7.    Defendant Bradley Arant Boult Cummings, (hereinafter "Bradley Arant") is a limited liability partnership organized pursuant to the laws of the State of Alabama and doing business in Jefferson County, Alabama.  Bradley Arant is the law firm defending Marion Bank in the lawsuit brought by Ragan Livingston. Bradley Arant partner, Robert C. Walthall is on the Board of Directors for Defendant Marion Bank. [1]

8.    At all relevant times, Bradley Arant continuously employed at least fifteen (15) persons and has been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

---

[1]Bradley Arant represented defendant Marion Bank and Conrad Taylor in all actions mentioned herein.

9.      Defendant Marion Bank and Trust, (hereinafter "Marion Bank") is a corporation organized pursuant to the laws of the State of Alabama and doing business in Jefferson County, Alabama.

10.     At all relevant times, Marion Bank continuously employed at least fifteen (15) persons and has been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

11.     Defendant, Conrad Taylor (hereinafter "Taylor"), at all times relevant, was a manager and bank president of Marion Bank, a resident of the State of Alabama, and subject to the jurisdiction of this Court.

## NATURE OF ACTION

12.     The Plaintiffs bring this action against Marion Bank, Bradley Arant and Conrad Taylor to redress numerous unlawful retaliatory practices committed by Defendants which violate either Title VII and/or state law claims of interference with contractual relations, intentional infliction of emotional distress, slander, libel, invasion of privacy and  interference with business relations.  Jurisdiction over Plaintiffs' claims which are based on Alabama law exists under the doctrine of supplemental jurisdiction, 28 U.S. C. §1367.  Plaintiffs further request a demand for a jury to hear their complaint.

13.     This action is to redress grievances resulting from the numerous retaliatory acts of the Defendants, its agents, servants, and employees committed with respect to the Plaintiffs. Defendants committed these acts because of the relationship between Plaintiffs and Ragan Livingston. Through these actions Defendants intended to punish Ragan Livingston for having opposed the sexual harassment committed by the Bank and Taylor.

14.     The Plaintiff seek damages for they harm which they have suffered and a permanent injunction restraining Defendants from further retaliatory acts.

15.     Plaintiffs seek compensatory and punitive damages to which they are entitled, injunctive relief and attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

16.     On June 29, 2012, within 180 days of learning of the acts of discrimination of which Plaintiff Greg Tolar complains, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC") against Marion Bank and Bradley Arant. (Attached herein as **Exhibit A** - Gregory E. Tolar v. Marion Bank and Trust, EEOC Charge Number 420-2012–02538 and Gregory E. Tolar v. Bradley Arant Boult Cummings, EEOC Charge Number 420-2012-02541).

17.     On June 29, 2012, within 180 days of learning of the acts of

discrimination of which Plaintiff Reid Tolar complains, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC") against Marion Bank and Bradley Arant. (Attached herein as **Exhibit B** - Reid Tolar v. Marion Bank and Trust, EEOC Charge Number 420-2012-02528 and Reid Tolar v. Bradley Arant Boult Cummings, EEOC Charge Number 420-2012-02530).

18.    On June 29, 2012, within 180 days of learning of the acts of discrimination of which Plaintiff Andrew Tolar complains, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC") against Marion Bank and Bradley Arant. (Attached herein as **Exhibit C** - Andrew Tolar v. Marion Bank and Trust, EEOC Charge Number 420-2012-02741 and Andrew Tolar v. Bradley Arant Boult Cummings, EEOC Charge Number 420-2012-02742.

19.    Each of these charges was dismissed by the EEOC on October 19, 2012 and Plaintiffs were granted the Right to Sue to bring this action.   (Attached herein as **Exhibit D**).  These notices of Right to Sue were received on October 22, 2012.

20.    All conditions precedent to the institution of this lawsuit have been fulfilled.

### STATEMENT OF FACTS AS TO GREG TOLAR

21.    Plaintiff Greg Tolar is the father of Ragan Tolar Livingston, the Plaintiff

in a previously filed and pending Title VII discrimination matter, _Ragan Livingston v. Marion Bank and Trust Co._, 11-CV-01369-JEO.

22.    Ms. Livingston filed an EEOC Charge of Discrimination on October 7, 2008, Charge No. 420-2008-03659, alleging that she was sexually harassed by the bank President, Conrad Taylor, during the course of her employment at Marion Bank.

23.    After complaining about the sexual harassment, the Bank and Mr. Taylor retaliated against Ms. Livingston by terminating her employment.

24.    Ragan Livingston subsequently filed a lawsuit suit against the Bank and Taylor alleging both sex discrimination and retaliation. Thereafter, the Bank and Taylor, both directly and in conjunction with their agent, Defendant Bradley Arant, took additional actions against members of Ragan Livingston's family intended as retaliation against Ragan Livingston. These actions aggrieved these other members of her family.

25.    Marion Bank is a financial institution located in Marion, Alabama.

26.    Marion, Alabama, is a small community, consisting of approximately 1200 households.

27.    Greg Tolar is an attorney licensed to practice law in the State of Alabama.

28.    At the time Ragan Livingston worked at Marion Bank, Greg Tolar had

actively, for a number of years, performed legal work for the Bank under the direction of Conrad Taylor and Preston Nichols, Vice President of Marion Bank.

29.     Greg Tolar's law office was located near the Marion Bank and the legal work performed by him on behalf of Marion Bank was a significant income source for Greg Tolar.

30.     Upon learning about the alleged sexual harassment which his daughter experienced at the bank, Greg Tolar complained to the Bank officers, one of whom is a partner at Defendant Bradley Arant.

31.     After voicing his complaints on behalf of his daughter and filing his daughter's charge of discrimination with the EEOC, the Bank and Taylor stopped referring business to Greg Tolar.  All of his work for the Bank ceased.  Further, the bank directly discouraged any bank customer from contacting Greg Tolar to close any loan for that customer even when the customer was an existing client of Greg Tolar.

32.     The Bank's conduct had a negative impact on Greg Tolar's monthly revenue receipts, adversely affecting his income and his reputation in this small community.

33.     Ultimately Greg Tolar, a solo practitioner, was forced to relocate his law office to another town and to develop a new client base and practice.

34.     A reasonable worker in Ragan Livingston's situation might be dissuaded

from making or supporting a charge of discrimination if she knew that her employer would take steps to economically harm her father.

35.    The Bank continued its retaliation against Ragan Livingston despite the fact that Ragan Livingston and Greg Tolar moved their families and residences to another town.

36.    One of the officers of the Bank, Robert Walthall, is a partner at Defendant Bradley Arant. The Bank, at the insistence of Mr. Walthall, hired Bradley Arant to represent it with regard to the Ragan Livingston litigation.

37.    Bradley Arant is a large regional law firm with a global perspective. Its web site and marketing information provides that it is one of the largest law firms in the Southeast, with offices located in Alabama, Mississippi, North Carolina, Tennessee and the District of Columbia. It has over 440 lawyers and on information and belief is the largest law firm in the State of Alabama.

38.    In or about December 2011, Bradley Arant took Ragan Livingston's deposition at the Birmingham offices of Bradley Arant (wherein she detailed the perverse and sexually harassing conduct which had been committed by the Bank president). At or about this same time, Ms. Livingston's counsel took the depositions of Conrad Taylor and several bank representatives.

39.    Within weeks of these depositions being taken, Bradley Arant filed a

notice of appearance in a separate lawsuit filed by the Bank against Greg Tolar arising out of a debt.

40.    Specifically, on February 8, 2012, Bradley Arant entered a notice of appearance in a previously filed 2010 collection case that Marion Bank had brought against Greg Tolar.   Bradley Arant had never previously represented Marion Bank in any collection type cases and the Ragan Livingston matter was the first sexual harassment and discrimination matter that Bradley Arant had ever defended on behalf of Marion Bank.

41.    Prior to the Notice of Appearance filed by Bradley Arant, the Bank's lawsuit against Greg Tolar had been fully adjudicated in Marion Bank's favor.  The only outstanding issue was Greg Tolar satisfying the judgment.

42.    When Greg Tolar received the electronic filing of the Notice of Appearance, he immediately contacted the Bradley Arant attorneys and offered to work with them to immediately resolve the judgment.  Bradley Arant did not respond to Greg Tolar's attempt to resolve the judgment.

43.    Rather than respond to Greg Tolar's attempts and offer, Marion Bank, through Bradley Arant, filed another lawsuit against Greg Tolar, personally, in which it accused him of fraud.  The fraud lawsuit also named Ragan Livingston's brother, Reid Tolar, a third year law student at the time, and two of Ragan Livingston's

uncles.

44.    Bradley Arant never sent a collection letter for the debt owed by Greg Tolar but instead immediately filed a fraud action against him.  This action was a deviation from Bradley Arant's normal business practice of first sending a collection letter to the debtor and attempting to collect a debt prior to filing suit.

45.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her employer would unnecessarily file a lawsuit against her father.

46.    In this new lawsuit the Bank and Bradley Arant alleged that Ragan Livingston's relatives had engaged in fraudulent misconduct in the management of a family trust in an attempt to hinder the Bank's ability to collect on the judgment against Greg Tolar.  This action not only was retaliatory as to Ragan Livingston, but also caused additional harm to Greg Tolar, and injured both Reid Tolar and Andrew Tolar.

47.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her employer would unnecessarily file a lawsuit against her close family members accusing them of fraud.

48.    Marion Bank, by and through Bradley Arant began issuing garnishments

11

to collect the debt owed by Greg Tolar.  By refusing to cooperate with Greg Tolar to settle the debt or provide pay-off information, the Bank and Bradley Arant further harmed Greg Tolar's financial position as an attorney to the point that he was forced to seek protection through Chapter 13 Bankruptcy to protect his business.

49.     A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her employer would take steps forcing her father into bankruptcy.

50.     The bankruptcy plan was filed and pursued as a one hundred percent payment plan wherein all of Greg Tolar's debts would be paid.  The Bank, Conrad Taylor and Bradley Arant's refusal to cooperate with Greg Tolar and their decision, instead, to pursue a "scorched earth" litigation strategy against Greg Tolar was the unlawful means by which the Defendants directly and unlawfully retaliated against Ragan Livingston.

51.     After Greg Tolar sought the protection of the Bankruptcy Court, Bradley Arant directly contacted the Bankruptcy Trustee through staff attorney Sabrina McKinney, to ask that Bradley Arant be hired to represent the Trustee. Bradley Arant wished to represent the Bankruptcy Trustee so as to pursue the fraudulent transfer action that it had filed against Greg Tolar.

52.     The Trustee refused this request for representation by Bradley Arant.

53.    Bradley Arant objected to Greg Tolar's bankruptcy plan even though the plan was a one hundred percent payment plan.  The fifty page objection filed by Bradley Arant sought immediate payment from a family trust even though Marion Bank and Bradley Arant knew that Greg Tolar had no interest in the corpus of the trust and would only receive income as a beneficiary upon the death of his mother, a distant future event.

54.    Bradley Arant and Marion Bank filed motions for temporary restraining orders to freeze Reid Tolar's interest in his grandfather's trust in a greater amount than the debt.  The amount sought and eventually frozen in the trust account where Reid Tolar was the beneficiary exceeded the debt owed by $100,000.  There was no just legal purpose to freeze the account of Reid Tolar other than to further retaliate against Ragan Livingston.

55.    On the last day to file proof of claims through the Bankruptcy Court, Bradley Arant submitted the claim for Marion Bank for an amount significantly less than the larger amount it had insisted for months was owed by Greg Tolar.  This amount was also significantly less than the amount frozen in Reid Tolar's account.

56.    Marion Bank and Bradley Arant had refused to acknowledge, until this last day of claim filing, the correct interest on the loan or that it had incorrectly added attorney's fees to the judgment.

57.    Within three weeks of Bradley Arant filing the correct claim and amount of payoff, Greg Tolar made arrangements to pay off the debt if Marion Bank and Bradley Arant would withdraw the objection to his bankruptcy plan.  Marion Bank and Bradley Arant refused to withdraw the objection to the bankruptcy plan unless Greg Tolar dropped his retaliation claim filed with the EEOC naming Bradley Arant and Marion Bank.

58.    Greg Tolar refused to drop his EEOC claim.

59.    Marion Bank and Bradley Arant eventually withdrew the objection to Greg Tolar's Chapter 13 plan and Greg Tolar immediately paid the debt and was able to dismiss his bankruptcy within four weeks.

60.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her employer, through its attorney, would unnecessarily drag out her father's ability to seek bankruptcy relief through the courts.

61.    Bradley Arant at all times, by and through its partners and agents, participated in the retaliatory acts directed by Marion Bank and Taylor.

62.    Greg Tolar's reputation has been harmed in the legal community by Defendants accusations of fraud.  Bradley Arant and Marion Bank knew at the time of the litigation that Greg Tolar had no interest in the family trust and had not

engaged in fraud.  It is slander per se for an attorney to be accused of fraud.

63.    Greg Tolar's reputation has been harmed in his church and social community.

64.    Further Greg Tolar's reputation and standing has been harmed in the business and legal community by having to seek the protection of the Bankruptcy Court due to the litigation strategy and tactics of Bradley Arant and Marion Bank.

65.    Further, Defendants have intentionally interfered with Greg Tolar's business relationships to further prevent him from working in the legal field and in the local legal community.

66.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her father's reputation as an attorney would be damaged in the local legal community which he served.

67.    As a result, Greg Tolar has been aggrieved due to the actions of Defendants and has suffered damages in the form of loss of income, benefits, mental anguish, reputation, standing, emotional distress and physical injury.

## STATEMENT OF FACTS TO REID TOLAR

68.    Reid Tolar realleges the facts 1-60 as if pled herein.

69.    Reid Tolar is the brother of Ragan Livingston.

70.     After the depositions in the *Ragan Livingston v. Marion Bank* matter at the Birmingham offices of Bradley Arant, Reid Tolar was named as a Defendant in a fraud action brought by Bradley Arant and Marion Bank.

71.     Reid Tolar did not owe Marion Bank or Bradley Arant any money at the time he was sued for fraud.

72.     Reid Tolar was a third year law student at the time he was sued for fraud by Marion Bank.

73.     Reid Tolar was caused to report the fraud action to the Alabama State Bar on his application for admission.  As a result Reid Tolar was called to report for an interview with the Character and Fitness Committee of the Alabama State Bar.

74.     As a result, Reid Tolar was caused to hire counsel to represent him in the hearings of the Committee.  Reid Tolar was initially told he would be unable to sit for the Bar Exam due to the fraud action pending against him.

75.     A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her brother's reputation would be brought into question and his fitness to practice law would questioned as a result of Defendant's actions.

76.     Due to efforts of his Counsel, Reid Tolar was eventually allowed to sit for the Bar Exam.

77.    Because Reid Tolar, now an attorney licensed with the State of Alabama, has been sued for fraud, he has been caused to report said litigation to all prospective employers and legal malpractice carriers.

78.    The allegations of fraud have tarnished Reid Tolar's reputation as a young lawyer.

79.    Bradley Arant and Marion Bank filed motions for temporary restraining orders to freeze Reid Tolar's interest in his grandfathers trust in a greater amount than the debt owed by Reid Tolar's father to Marion Bank.

80.    The amount sought and eventually frozen in the trust account where Reid Tolar was a partial beneficiary exceeded the debt owed by Greg Tolar by an additional $100,000.  There was no just legal purpose to freeze the account of Reid Tolar but to further retaliate because of the claims of Ragan Livingston.

81.    As a result Reid Tolar was without the use and benefit of this money. Further, to satisfy the Alabama State Bar in order to sit for the Bar Exam, Reid Tolar warranted that he would pay his father's debt to Marion Bank.

82.    Due to the retaliatory litigation tactics of Marion Bank, Conrad Taylor and Bradley Arant, Reid Tolar provided the funds for his Father, Greg Tolar to pay to Marion Bank.

83.    A reasonable worker in Ragan Livingston's situation might be dissuaded

17

from making or supporting a charge of discrimination if she knew that her brother's financial security would be jeopardized by Defendants.

84.    Reid Tolar's reputation has been harmed in the legal community by Defendants accusations of fraud.  Bradley Arant and Marion Bank knew at the time of the litigation that Reid Tolar did not owe Marion Bank any money and had not engaged in any type of fraud as being a partial beneficiary in his deceased grandfather's trust.  It is slander per se for an attorney to be accused of fraud.

85.    Reid Tolar's reputation has been harmed in his church and social community.

86.    Further Reid Tolar's reputation and standing has been harmed in the business and legal community by having his family seek the protection of the Bankruptcy Court due to the litigation strategy and tactics of Bradley Arant and Marion Bank.

87.    Further, Defendants have intentionally interfered with Reid Tolar's business relationships to further deter his working in the legal field and in the local legal community.

88.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her brother's reputation would be damaged by Defendants.

89.    As a result, Reid Tolar has suffered damages in the form of loss income, benefits, mental anguish, reputation, standing, emotional distress and physical injury.

## STATEMENT OF FACTS TO ANDY TOLAR

90.    Andy Tolar realleges the facts 1-82 as if pled herein.

91.    Andy Tolar is the uncle of Ragan Livingston.

92.    After the depositions in the _Ragan Livingston v. Marion Bank_ matter at the Birmingham offices of Bradley Arant, Andy Tolar was named as a Defendant in a fraud action brought by Bradley Arant and Marion Bank.

93.    Andy Tolar did not owe Marion Bank or Bradley Arant any money at the time he was sued for fraud. Andy Tolar was not responsible for the debts of his brother and was not holding any money for his brother Greg Tolar at the time he was sued for fraud by Marion Bank, Conrad Taylor and Bradley Arant.

94.    Andy Tolar had never been sued prior to this action and no demand for collection was ever made to him prior to being served with the Complaint accusing him of fraud.

95.    As a result Andy Tolar was caused to spend great time and secure counsel to represent him. The lawsuit was eventually dismissed against him.

96.    A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her uncle

would be unjustly sued by Defendants and forced to expend time and resources defending against a groundless action.

97.     Even though the fraud action was dismissed, it is a matter that he has to report on certain documents.  Most recently he was required to reveal this groundless action when he attempted to purchase a home.  He had to answer numerous questions about the fraud action brought against him by Bradley and Marion Bank.  Further, to obtain the home loan, he had to gather and produce documents to the lending company showing that the fraud matter had been resolved and was no longer a pending matter.

98.     The only reason that Andy Tolar was sued for fraud was because he is the uncle of Ragan Livingston.

99.     Andy Tolar's reputation has been harmed in the legal community by Defendants accusations of fraud.  Bradley Arant and Marion Bank knew at the time of the litigation that Andy Tolar did not owe Marion Bank any money and had not engaged in any type of fraud as being a partial beneficiary in his deceased father's trust.

100.   Andy Tolar's reputation has been harmed in his church and social community.

101.   Further Andy Tolar's reputation and standing has been harmed in the

20

business community by due to the litigation strategy and tactics of Bradley Arant, Conrad Taylor and Marion Bank.

102.   Further, Defendants have intentionally interfered with Andy Tolar's business relationships and reputation to further deter Ragan Livingston in her claims against Marion Bank.

103.   A reasonable worker in Ragan Livingston's situation might be dissuaded from making or supporting a charge of discrimination if she knew that her uncle's reputation would be damaged by Defendants.

104.   As a result, Andy Tolar has suffered damages in the form of loss income, benefits, mental anguish, reputation, standing,  emotional distress and physical injury.

## COUNT ONE

### RETALIATION

105.   Greg Tolar, Reid Tolar and Andy Tolar re-allege and incorporate by reference herein paragraphs 1 through 97 with the same force and effect as if fully set out in specific detail herein below.

106.   Greg Tolar, Reid Tolar and Andy Tolar are aggrieved individuals as defined by statute.

107.   Title VII provides that "a civil action may be brought . . . by the person

claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1).

108.    Greg Tolar, Reid Tolar and Andy Tolar are persons who fall within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint. *Thompson v. North American Stainless, LP*, __ U.S. __, 131 S.Ct. 863, 870 (2011).

109.    Ragan Livingston exercised her statutory rights to complain of discrimination and sexual harassment in the workplace at Marion Bank.

110.    Bradley Arant represents Marion Bank in Ragan Livingston's litigation against the Bank. Bradley Arant partner, Robert Walthall, is a Director and stockholder of Marion Bank and directly participated in the decisions to terminate and retaliate against Ragan Livingston and her family members.

111.    Prior to Ragan Livingston filing her lawsuit against Marion Bank and Conrad Taylor, Bradley Arant had not performed legal services for Marion Bank.

112.    Marion Bank had, until Ragan Livingston's lawsuit, always sought legal counsel from local attorneys in or around Marion, Alabama.

113.    Walthall encouraged Marion Bank to hire Bradley Arant to handle the sexual harassment claims of Ragan Livingston.

114.    Shortly after the depositions in the Ragan Livingston matter, Bradley Arant entered an appearance in a matter that had already been resolved to Marion's

Bank satisfaction against Ragan Livingston's father, Greg Tolar.

115.    Despite, Greg Tolar contacting Bradley Arant to satisfy the debt owed, Bradley Arant, Marion Bank and Conrad Taylor chose to engage in litigation tactics to force Greg Tolar out of business and into bankruptcy.

116.    No effort was made by Bradley Arant to collect the debt owed other than engaging in immediate garnishment, filing a separate fraud action against Greg Tolar, Reid Tolar and Andy Tolar and freezing the account of Reid Tolar.

117.    These actions deviated from Bradley Arant's usual business practices of collecting a debt.

118.    Marion Bank and Bradley Arant's decision to institute unnecessary litigation against Ragan Livingston's father, brother, uncle and other members of her family places each of this individuals within the zone of interests protected by Title VII.

119.    The Defendant's conduct proximately caused Greg Tolar, Reid Tolar and Andy Tolar to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they each claim damages as set out below.

120.    Greg Tolar, Reid Tolar and Andy Tolar seek declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's

fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

## INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS

121.   Greg Tolar, Reid Tolar and Andy Tolar, re-alleges and incorporates by reference paragraphs 14 through 84 with the same force and effect as if fully set out in specific detail herein below.

122.   At all times relevant to this Complaint, Greg Tolar, Reid Tolar, and Andy Tolar were engaged in commercial activity which depends upon establishing relationships of trust with clients and/or customers.

123.   Defendants were aware of the nature of the commercial activity engaged in by Greg Tolar, Reid Tolar and Andy Tolar and sought to damage and harm that commercial activity.

124.   Defendants intentionally interfered with the commercial activities that Greg Tolar, Reid Tolar and Andy Tolar engaged in because Ragan Livingston complained about discrimination and harassment at Marion Bank by Conrad Taylor, bank president.     125.   Defendants wilfully and wantonly sought to damage and harm Greg Tolar, Reid Tolar and Andy Tolar.

126.   As a result of Defendants' intent to harm the Plaintiffs, Defendants garnished the income of the Plaintiffs and filed a groundless lawsuit against them

alleging fraud.

127.    Defendants, through their conduct, caused untrue allegations of fraud to be disseminated to the public at large, including Plaintiffs' client, customers, and potential clients and customers, thereby harming the reputation of Greg Tolar, Reid Tolar and Andy Tolar in the community at large and specifically in the legal community of Greg and Reid Tolar.

128.    Defendants broadcasted the untrue information about the fraud complaint and its status to other members of the community at large and the legal community including judges before whom Greg and Reid Tolar regularly appeared.

129.    As a result of Defendants' intentional acts of interference, Greg Tolar, Reid Tolar and Andy Tolar were damaged.  As a proximate result of the Defendants' unlawful conduct, Greg Tolar, Reid Tolar and Andy Tolar were caused to suffer loss of pay, benefits,  embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

130.    Greg Tolar, Reid Tolar and Andy Tolar seek declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

## INVASION OF PRIVACY

131.    Greg Tolar, Reid Tolar and Andy Tolar, re-allege and incorporate by reference paragraphs 14 through 84 with the same force and effect as if fully set out in specific detail herein below.

132.    This is a claim against the Defendants for the invasion of privacy of Greg Tolar, Reid Tolar and Andy Tolar's based on the laws of the State of Alabama.

133.    Defendants invaded Greg Tolar, Reid Tolar and Andy Tolar's personal and emotional sanctum by harassing and retaliating against them.    When Ragan Livingston complained about the sexual harassment and retaliatory treatment she received at Marion Bank, the Defendants chose to continue the retaliation by directly attacking her male relatives and placing them in a false position in the public eye.

134.    Defendants publicized private information about Greg Tolar, Reid Tolar and Andy Tolar and violated their right to privacy.    Defendant intruded into Greg Tolar, Reid Tolar and Andy Tolar's  physical solitude and seclusion by having Greg Tolar, Reid Tolar and Andy Tolar defend against false statements, false accusations, lawsuits and retaliatory legal tactics.

135.    The Defendant's conduct proximately caused Greg Tolar, Reid Tolar and Andy Tolar's to suffer embarrassment, humiliation, loss of reputation, emotional

distress, trauma, and mental anguish for which they claim damages as set out below.

136.    Greg Tolar, Reid Tolar and Andy Tolar's seek declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

### DEFAMATION
### LIBEL AND SLANDER

137.    Greg Tolar, Reid Tolar and Andy Tolar, re-allege and incorporate by reference paragraphs 14 through 84 with the same force and effect as if fully set out in specific detail herein.

138.    Defendants were negligent and wanton in publishing false and defamatory statements against and about Greg Tolar, Reid Tolar and Andy Tolar.

139.    The false and defamatory statements published by Defendants were *slander per se* and *slander per quod*.  Defendants knew that their allegations about Greg Tolar, Reid Tolar and Andy Tolar engaging in fraudulent actions with regard to their father/grandfather's trust were knowingly false, defamatory, and malicious when made.

140.    Defendants' defamatory statements about Greg Tolar, Reid Tolar and Andy Tolar were made to ridicule and disgrace Plaintiffs.  Specifically, Greg and Reid Tolar were disgraced before other members of the legal bar in which they must

practice, before members of the judiciary before whom they must appear, and before client whom they must represent.

141.    Defendants' defamation caused Greg Tolar, Reid Tolar and Andy Tolar to hire special counsel to assist them and to save their business and livelihoods.

142.    Greg and Reid Tolar are solo practitioners in a small bankruptcy practice in a small town.  Defendant Bradley Arant is a large corporate law firm and knew that the false allegations of misconduct and fraud, brought at the direction of their client, would directly and irrevocably harm Greg and Reid Tolar personally and professionally.

143.    As a result of Defendants' actions Greg Tolar, Reid Tolar and Andy Tolar were damaged in their businesses and in their ability to sustain those businesses and their families.  These damages were the intended result and natural consequences of the slanderous statements made by Marion Bank, Conrad Taylor and Bradley Arant.

144.    The Defendants' conduct proximately caused Greg Tolar, Reid Tolar and Andy Tolar to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

145.    Greg Tolar, Reid Tolar and Andy Tolar seek declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's

fees, and any and all such other relief the trier of fact may assess.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

146.   Greg Tolar, Reid Tolar and Andy Tolar, re-allege and incorporate by reference paragraphs 14 through 84 with the same force and effect as if fully set out in specific detail herein below.

147.   This is a claim against Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

148.   The conduct of Defendants, its agents, employees, managing partner, and the Executive Committee, was beyond the bounds of decency as directed to Greg Tolar, Reid Tolar and Andy Tolar.

149.   Such conduct is not condoned by society and should not go unpunished.

150.   The conduct of the Defendants, as aforesaid, was retaliatory and engaged in by Defendants only because Ragan Livingston complained and brought an action against Marion Bank and Conrad Taylor.  Greg Tolar, Reid Tolar and Andy Tolar were subjected to unlawful treatment because of their association and relation to Ragan Livingston, with the intention of harming both the Plaintiffs and Livingston.

151.   The Defendants' conduct proximately caused Greg Tolar, Reid Tolar and Andy Tolar to suffer monetary damages, embarrassment, humiliation, loss of

reputation, emotional distress, trauma, and mental anguish for which they claim damages as set out below.

152.   Greg Tolar, Reid Tolar and Andy Tolar seek declaratory and injunctive relief, award of compensatory and punitive damages, mental anguish, costs, attorney's fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Greg Tolar, Reid Tolar and Andy Tolar respectfully request this Court:

A.    Permanently enjoin Defendants from further retaliation and unlawful conduct;

B.    Order all Defendants, its agents, owners and employees to institute and carry out policies, practices and programs which provide no retaliation and which eradicates the effects of its past and present unlawful retaliatory practices, including implementing a consistent policy against discrimination and retaliation in the work place;

C.    Order Defendants, its agents, owners and employees to make Greg Tolar, Reid Tolar and Andy Tolar whole by providing appropriate monetary damages and such other monetary relief as may be available to them, including damages for their physical, mental and emotional distress, embarrassment, humiliation and trauma;

D.    Award Greg Tolar, Reid Tolar and Andy Tolar compensatory and

punitive damages under the laws of the State of Alabama and the Constitution of the United States;

      E.     Award Greg Tolar, Reid Tolar and Andy Tolar their costs and expenses herein, including reasonable attorney's fees, where applicable; and

      F.     Award such other and further relief which this Court deems appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**


Respectfully submitted,


Alicia K. Haynes
Attorney for Plaintiff


**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL    35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A